1                UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF TENNESSEE
2                  NASHVILLE DIVISION

3

UNITED STATES OF AMERICA     )
4                       )
  vs                     )     Case No. 3:18-cr-00144-1
5                       )
  MARK BRYANT            )
6

7  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

8

9                 BEFORE THE HONORABLE

10       WAVERLY D. CRENSHAW, JR., CHIEF DISTRICT JUDGE

11            TRANSCRIPT OF PROCEEDINGS

12               January 2, 2020

13

14  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

15

16

17

18

19

20

21

22

23  Patricia A. Jennings, RMR, CRR
    Official Court Reporter
24  837-A U.S. Courthouse
    Nashville, TN 37203
25  patty_jennings@tnmd.uscourts.gov

```
1   APPEARANCES:

2   For the Government:        Sara E. Myers
                               US Attorney's Office
3                              110 Ninth Avenue, S
                               Suite A961
4                              Nashville, TN  37203-3870

5                              Michael J. Songer
                               US Department of Justice
6                              Criminal Division
                               950 Pennsylvania Avenue, NW
7                              Washington, DC  20530

8   For the Defendant:         Peter J. Strianse
                               Tune, Entrekin & White, P.C.
9                              315 Deaderick Street
                               Suite 1700
10                             Nashville, TN  37238

11  Also Present:              Joy Wright - Agent

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1       The above-styled cause came to be heard on

2   January 2, 2020, at 10:30 a.m., before the Honorable Waverly

3   D. Crenshaw, Jr., Chief District Judge, when the following

4   proceedings were had, to-wit:

5

6       THE COURT:  Okay.  We're here on Case 18-144,

7   *United States of America versus Mark Bryant*.  And Mr. Bryant

8   is in the courtroom.  If counsel can introduce themselves.

9       MR. SONGER:  Good morning, Your Honor.  Mike

10  Songer and Sara Beth Myers for the United States.  And we're

11  joined at counsel table with Special Agent Joy Wright.

12      THE COURT:  Okay.

13      MR. STRIANSE:  Good morning, Your Honor.  Peter

14  Strianse of the Nashville Bar here on behalf of defendant,

15  Mark Bryant.

16      THE COURT:  All right.  So we're here for the

17  pretrial -- final pretrial conference.  And I'm going to --

18  we've done this before.  So I'm going to assume that everyone

19  remembers sort of the procedure, but I am going to point out

20  a couple of things just to remind everyone.

21      I assume the case will again take about three to

22  four days?  Verbalize --

23      MR. SONGER:  That's our expectation.  Thank you.

24      THE COURT:  Okay.  Is that consistent with yours,

25  Mr. Strianse?

1          MR. STRIANSE:  Yes, Your Honor.

2          THE COURT:  Okay, good.  I just need to know what

3   to tell the jury.  So you know how I select a jury.  That's

4   not going to change.  I had identified 20 minutes for the

5   parties' voir dire.  I do want to remind you-all that during

6   voir dire, that's not the time -- and I'll be cutting you off

7   if you do this now, get into the law or your legal theories

8   or any case-specific questions.  Also, any attempt to try to

9   get the jury to commit itself to any findings of fact would

10  be totally inappropriate.

11          Remember, we just need to make sure that the

12  people who are selected to serve on the jury don't have any

13  bias, don't have any prejudice or have not read anything or

14  know anything about this case that would otherwise disqualify

15  them from serving.

16          So as I did before, I'll cover the general things,

17  such as prior jury service, state, federal, Grand Jury,

18  et cetera, identify the witnesses.

19          Mr. Strianse, is your witness list going to be the

20  same as before?

21          MR. STRIANSE:  I believe it will be.

22          THE COURT:  All right.  So just to remind you,

23  we're creating a new trial record.  So what was in the first

24  trial, we need to make sure the record we're creating

25  starting right now reflects that.  So if you'll just file a

```
 1  notice adopting your prior witness list --
 2          MR. STRIANSE:  Yes, sir.
 3          THE COURT:  -- that will be clear.
 4          MR. STRIANSE:  Yes, sir.
 5          THE COURT:  Okay.  Also, I'm going to do as we did
 6  before, and we agreed before, just notify the jury that
 7  Mr. Norris is deceased for reasons unrelated.  I'll probably
 8  do that during my questioning.
 9          I guess Ms. Wright is going to be the government
10  representative?
11          THE AGENT:  Yes, sir.
12          THE COURT:  Jennifer Wright?
13          THE AGENT:  It's Joy, sir, J-O-Y.
14          THE COURT:  Joy.  Okay.  Were you here before?
15          THE AGENT:  Yes, sir, I was.
16          THE COURT:  Okay.  So you know you just need to be
17  here every day, all day, until I release you, until we
18  conclude the trial.
19          I noticed that the state case is still pending;
20  correct?
21          MR. STRIANSE:  Set for trial on January 22nd.
22          THE COURT:  Right.  Have you all seen any media
23  about that?
24          MR. STRIANSE:  No, Your Honor.
25          MR. SONGER:  I have not.
```

1          THE COURT:  Okay.  So I intend to ask the jury --

2    tell the jury don't read anything about Mr. Bryant, don't

3    read anything about this case, and don't read anything

4    related to this case.  We're not going to get into the

5    pending state case, but I do fear as that gets closer to

6    trial -- in Cheatham County?

7          MR. STRIANSE:  Yes, sir.

8          THE COURT:  -- where there's not much to put in

9    the news, this could very well be put in the news, and then a

10   juror reads it and knows about that state case, inadvertently.

11   So I intend to give them that admonition.

12         Okay.  As you know, I'll use your statement of the

13   case to transition from the general questions in voir dire to

14   the more specific case.  And in that respect, your joint

15   statement of the case is good.  I do want to make one change

16   that I think will help the jury.  We sometimes forget, the

17   jury, who's never heard anything about this case, has got to

18   begin to understand the chronology, et cetera.

19         So look at Document 83, where it says Count Five

20   and describes the new count.  I want to change that to say

21   "Count Five charges that on August the 2nd, 2017, Bryant made

22   a materially false statement to a special agent of the FBI,

23   who was investigating the November 5th, 2016, incident."  I

24   think that helps the jury put that in perspective.

25         Any objection from the government?

1      MR. SONGER:  No objection from the government,
2  Your Honor.
3      MR. STRIANSE:  Your Honor, what was the language
4  you were going to use?
5      THE COURT:  It just says, "Count Five charges that
6  on August 2, 2017, Bryant made a materially false statement
7  to a special agent of the FBI," et cetera.
8      MR. STRIANSE:  Would you put the word "allegedly"
9  before that, "allegedly made"?
10      MR. SONGER:  It already says "charges" in the
11  sentence, which is consistent with all the other counts.
12      THE COURT:  I can change the word "charges" to
13  "alleges," but this is your-all's joint statement that said
14  "charges".
15      MR. STRIANSE:  That's fine.
16      THE COURT:  Okay.  All right.  So the exhibits, it
17  looks like the exhibits are the same as in the first trial,
18  as well as the witnesses.  Did I miss one?  Is that right?
19      MR. SONGER:  Your Honor, you're correct, I
20  believe, that the witness list is the same.  There are some
21  additional exhibits that were submitted by the government.
22      THE COURT:  All right.  I thought I went through
23  each one.  Which ones -- I missed it then.  Which ones are
24  new?  Because I did a comparison.  I couldn't figure it out.
25      MR. SONGER:  Your Honor, I don't have both lists

1 in front of me, but I believe there are 39 exhibits that were

2 submitted for this trial.  There were only, I believe, 25 or

3 26 in the first trial.

4          THE COURT:  24.

5          MR. SONGER:  That sounds right.

6          THE COURT:  All right.  So you've added additional

7 ones in here that I can't -- I didn't --

8          MR. SONGER:  It's a few additional incident

9 reports.  It's a couple pictures of injuries that the victim

10 sustained and a handful of other things.

11          THE COURT:  Okay.  So have all those been provided

12 to the defendant?

13          MR. SONGER:  Yes, sir.

14          THE COURT:  Okay.  So you'll give me my copy.  I

15 see we still have Government's Exhibit 3.  And I'm going to

16 ask the government to redact any references there to cases or

17 the law.  As you recall in the first trial, I had a concern

18 about the jury reading what was in Exhibit 3 as a statement

19 of the law.  I went back over Exhibit 3.  I think you can

20 easily redact out the cases, and you don't lose anything from

21 that exhibit.

22          MR. SONGER:  That's no problem, Your Honor.

23          THE COURT:  All right.  You confirmed the

24 witnesses are the same.  And are we also going to call as

25 before the -- I just read his name.  Now I can't find it.

1   The gentleman who needed some special accommodations.

2         MR. SONGER:  Yes, that's Mr. Montgomery.  We do

3   anticipate calling him again.

4         THE COURT:  Right.  So we're going to do that like

5   we did before.  The courtroom deputy needs -- you alert her

6   before we call that wit -- Mr. Montgomery.  And we'll just

7   put him in front of the witness stand and let him testify

8   there.  I think the last time we put a lavaliere.  And make

9   sure he can see the overhead for any documents.

10        Does that still work for the government?

11        MR. SONGER:  Yes, Your Honor.

12        THE COURT:  Okay.  Okay.  For the opening

13   statement, I had 20 minutes, for your closing, 30 minutes.

14   And, again, I just want to remind you-all that that's not the

15   time to talk about your legal theories.  It's a narrative.

16   It's a factual narrative of what you anticipate the proof to

17   be.  So I will be cutting you off or telling the jury to

18   ignore anything that asks them or starts trying to engage in

19   a closing argument or otherwise talk about what your theory

20   of the case -- legal theory may be.

21        Talk about your witnesses.  Talk about what facts

22   you think you're going to be able to present.  Talk about

23   those things that they're going to hear as it pertains to the

24   evidence, the evidence only.  I think I've been too liberal

25   on that, and I just want to tighten that up going forward.

1          Does the government intend to use the TASER again

2    as a demonstrative?

3          MR. SONGER:  We do, Your Honor.  And could I speak

4    for a moment to the opening and closing statements?

5          THE COURT:  Sure.

6          MR. SONGER:  Certainly, the 20 minutes that

7    Your Honor suggested for the openings is certainly fine with

8    the government.  For the closing, I believe in the first

9    trial you gave each side 45 minutes.  And since then, we've

10   added an additional count with different elements that will

11   have to be explained to the jury.  So I just think we need,

12   if anything, more than 45 minutes for the closing this time.

13   The most recent trial I did in front of Your Honor, we had an

14   hour on each side.  I think that's what we would request

15   here.

16         THE COURT:  That was too long too, but that's

17   okay.  Yeah, I'm going to keep it at 30, but you can renew

18   that.  Let's see how the proof comes in.  Count Five is

19   really pretty straightforward.  So I don't think their

20   ability to understand that is going to be all that enhanced

21   by more time.  So I'm going to keep it at 30, but you renew

22   it before we do it.

23         MR. SONGER:  Would the Court at least consider at

24   least 45 minutes?  This case hung before.  We want to make

25   sure we have time to explain the issues to the jury, so we're

1  not back here again.

2          THE COURT:  Well, one way to do that is for all of

3  the lawyers to be very precise in your wording and choice of

4  words.  But do raise it before we go to closing.

5          MR. SONGER:  Thank you.

6          THE COURT:  I definitely want to hear it again.

7          I think I recall at the first trial we had some

8  ongoing issues with playing videos.  Am I remembering that

9  correctly?

10          MR. SONGER:  I don't believe so, Your Honor.

11          THE COURT:  Okay.  Let's make sure we don't do it

12  this time then.  It seems like inevitably we always have

13  problems getting the video started.  So if you all want to

14  come back this afternoon or Monday or Friday, we can make the

15  courtroom available, you can go ahead and have that -- make

16  sure it's going to work properly.

17          I think -- I've already told you at the first

18  trial how you can use exhibits.  That doesn't change.  Just

19  remind you again, make sure your lavaliere works.  The jury

20  really gets annoyed when I have to keep telling these smart

21  lawyers "Make sure we can hear you."

22          Is Jeff Key and Josh Marriott still employed by

23  the Cheatham County Sheriff?

24          MR. SONGER:  My understanding is that they are,

25  yes.

1        THE COURT:  Going back to voir dire, I will also

2   probably ask questions, and I think I did before, any

3   knowledge anyone has of TASERs or the use of TASERs, any

4   connection they have with law enforcement, have they done any

5   investigation about this case.

6            Apparently, there is some agency in Washington, DC

7   that publishes the docket for every district court in the

8   nation.  And jurors I've learned know how to get there, and

9   they see what case is going to be heard on January the

10  whatever -- Tuesday and in the Middle District.  And, you

11  know, they've been summoned.  And they go there and start

12  doing their own investigation.  That came as quite a

13  surprise.  We've asked them to stop doing that, but I'm not

14  sure I can pull that off.

15            Is Sheriff Michael Breedlove still in that

16  position in Cheatham County?

17            MR. SONGER:  Yes, Your Honor.

18            THE COURT:  And then finally, I may ask them has

19  anyone ever been held in custody.  And, obviously, if anyone

20  has, we'll talk about that here at the bench.

21            Okay.  Where are you-all on the stipulations?  We

22  had three before.  Are you going to readopt those here?

23            MR. STRIANSE:  I think so, yes, sir.

24            THE COURT:  So let's file those anew.  So -- or

25  either adopt that docket number.  I don't have the docket

1  number, but just say "That applies here now going forward."

2          MR. SONGER:  Certainly.

3          THE COURT:  And I gather it's contested whether

4  Mr. Bryant was acting under cover of state law.

5          Mr. Strianse, is that contested?

6          MR. STRIANSE:  I don't remember that being

7  contested last time.

8          THE COURT:  It was, to my surprise, because I have

9  a note here "Can't we stipulate to that?"  We actually

10 charged them on that issue.

11         MR. STRIANSE:  Okay.

12         MR. SONGER:  Certainly, we'll stipulate to it if

13 the defense will.

14         MR. STRIANSE:  Who did you offer last time on that

15 issue?

16         MR. SONGER:  There's a number of witnesses who

17 explained that he was working as a corrections officer at the

18 time.

19         MR. STRIANSE:  Your Honor, I don't believe that's

20 going to be an issue.

21         THE COURT:  Okay.  So when you do -- let's do a

22 new stipulation, so the record's clear on that.

23         MR. STRIANSE:  Yes, sir.

24         THE COURT:  Okay.  There was no objection at the

25 first trial to the authenticity of any exhibits.  Does that

1  remain true for this?

2           MR. STRIANSE:  Yes, sir.

3           MR. SONGER:  Yes, Your Honor.

4           THE COURT:  Okay.  I think you-all had a lot of

5  agreement on the admissibility of those.  And I'll just note

6  that I would expect that to continue for this trial as well.

7           All right.  So let's go to the motions in limine.

8  Some have been adopted and the record's clear from the first

9  trial here.  So the first one is the government's motion to

10 prohibit reference to equally available witnesses, which was

11 granted and not opposed.

12          The government's -- second is the government's

13 motion to exclude reference to defendant's pending

14 prosecution, which was granted as before.

15          The third is the government's motion to prohibit

16 defendant from eliciting his own statements without

17 testimony -- without testifying.  And I'm going to deny that

18 without prejudice.  That needs to be raised during the trial

19 so the Court can make a ruling based on what's being

20 presented.

21          The fourth one is the government's motion to

22 exclude evidence of the victim's bad character or conduct.

23 I'm going to hold that in abeyance till trial.  It needs to

24 be raised at that time outside the presence of the jury.  We

25 had extensive discussion and argument about that, and I

1  anticipate you-all may have some -- some new arguments to

2  present on that.  And best to consider that during the trial.

3          The fifth one is the government's motion to

4  exclude evidence of the defendant's good character or

5  conduct.  So that's going to be denied in part and held in

6  abeyance.  That part of it that's denied has to do with the

7  defendant's truthfulness, which the -- which is clearly at

8  issue here.  In all other respects -- I'm sorry.  The

9  truthfulness, that will be denied.  And also, it appears I

10  should deny the government's motion to the extent it seeks

11  exclusion of the defendant's law-abiding nature.  That came

12  in the last time because after doing some research, we found

13  prevailing case law -- a lot of case law saying that that is

14  admissible.  But in all other respects, that will be held in

15  abeyance.  And particularly, any proof about the defendant's

16  competence or good reputation as a correction officer needs

17  to be raised at trial.

18          The government's motion in limine to exclude --

19          MS. MYERS:  Oh, excuse me, Your Honor.  Back on

20  that point, actually, so in the last trial, this did come up.

21  And it did come up during the trial and not outside the

22  presence of the jury.  And so just want to make sure that if

23  there's going to be any cross-examination on whether someone

24  thinks that he's a malicious person -- those questions were

25  actually asked during the trial.

1    THE COURT:  So that needs to be raised before you

2  do that cross-examination and/or you need to object so I can

3  address it.

4    MS. MYERS:  Yes, Your Honor.

5    THE COURT:  Then the next motion is the

6  government's motion in limine to exclude jail administration

7  determination.  That's Docket No. 79.  I'm going to deny that

8  motion.  Here, it appears there's going to be proof that the

9  Cheatham County Sheriff's Office conducted two investigations.

10  The first investigation was done a few weeks after the

11  November 5th events.  The second investigation occurred

12  months later in 2017.

13    The first investigation appears to have exonerated

14  him under its standards of conduct, and the second

15  investigation did the opposite.  By admitting this, I'm

16  admitting it not for the truth of the Cheatham County

17  Sheriff's Office investigations, but to show the standards of

18  conduct that all officers, including the defendant,

19  Mr. Bryant, were required to comply with.

20    So in that respect, the defendant needs to give me

21  a charge that, when that evidence comes in, I can immediately

22  tell them it's not being offered for the truth stated, but

23  for that purpose of showing what the sheriff department's

24  standard of conduct is.  I also think the proof is relevant

25  to bias or prejudice.  Specifically, I note the government's

exhibit list includes Sheriff Michael Breedlove and JJ
Hannah, who appear to have been intimately involved in the
investigations.

And finally, the government's motion in limine to
exclude testimony from the civil lawsuit is granted.  One, I
don't think the civil lawsuit is relevant under 401.  It was
filed, immediately settled, and it would be confusing to the
jury to understand how it would -- how it would -- how it is
to use that civil lawsuit and that settlement.

I still note, though, that Jeff Key and -- I guess
it's José Marriott?

MR. SONGER:  Josh Marriott, Your Honor.

THE COURT:  Josh.  Sorry.  Jeff Key and Josh
Marriott are still employed by the sheriff's department.
They can still be cross-examined on their bias in favor of
their current -- Josh Marriott is still employed by the
sheriff's office.  They can still be cross-examined on their
favorable bias toward their employer without any reference to
that civil lawsuit.  So if they testify, that would be a
proper subject for cross-examination.  And I'll allow the
defendant to develop their bias so the jury can consider
that.

MR. STRIANSE:  Your Honor, can I address the Court
on --

THE COURT:  Sure.

1      MR. STRIANSE:  -- the government's second motion

2  in limine, which is Docket Entry 80, the civil lawsuit?

3          THE COURT:  Okay.

4          MR. STRIANSE:  The Court noted in ruling on Docket

5  Entry 79 that the Cheatham County Sheriff's Office did this

6  flip-flop, where initially they reviewed Officer Bryant's

7  conduct and gave him a clean bill of health, and it's not

8  until July of 2017 that they do this 180.  The reason they do

9  the 180 is because the civil lawsuit was filed on July 21st,

10  2017, in the United States District Court for the Middle

11  District of Tennessee.

12          I think the jury needs to know, or I need to be

13  given -- and need to be given the opportunity to

14  cross-examine, whether it's Hannah, Breedlove, or somebody

15  else from the sheriff's department, as to why their position

16  may have changed.  And, quite frankly, I think it was

17  apparent in the first trial that their position changed

18  because they had been sued, and they were prominently

19  mentioned in all of the local media.  And once they were sued

20  effective July 21, 2017, then they do the 180 and say, well,

21  his conduct was inappropriate.  I think that's --

22          THE COURT:  Why can't you just cross-examine them

23  on the fact there was a lot of media?  And that was in your

24  papers.  And that was one of the reasons I don't think you're

25  prejudiced.  You can still cross-examine them that their

1  current employer -- who their current employer is.  And, of

2  course, they're going to give favorable testimony toward

3  their current employer.

4           Number two, there was a lot of media about this

5  event.  Correct.  Some of that media may have mentioned your

6  names.  Correct.  And as a result of that media, you

7  didn't -- you felt some embarrassment, or however you want to

8  put it, in the community about what -- about the allegations.

9           MR. STRIANSE:  Your Honor, I think the Court knows

10  the effect of being sued in the United States District Court

11  will tend to get somebody's attention much more than an

12  unfavorable or unsavory news report.

13           THE COURT:  But then that's where you connect it

14  up and say and as a result of that media -- well, don't say

15  as a result.  But after that media that was embarrassing to

16  you, sir, the sheriff's department changed its result.  Yes.

17  Yes.  Yes.  Yes.

18           MR. STRIANSE:  Your Honor, is this something that

19  we can see how it develops during the course of the trial?

20           THE COURT:  Sure.

21           MR. STRIANSE:  It just seems so clear to me that

22  that's such a triggering event.  When there are pecuniary

23  interests, when their jobs are on the line, that's when they

24  decide to say that Mark Bryant was a bad officer and didn't

25  follow policies.

1    THE COURT:  Yeah.  Okay.  Well, you see that -- I
2  think you still can set it up chronologically and give the
3  jury the facts from which an inference could be made that
4  something changed at the sheriff's department as a result,
5  and that might be the embarrassment in the media.
6    MR. STRIANSE:  Well, embarrassment is much more
7  tepid than getting yourself sued in the United States
8  District Court.
9    THE COURT:  But I think that's a -- yeah, let's
10  talk about it more.  I think it's a two-edge sword for you
11  because, yeah, I was sued.  The case settled weeks after it
12  was filed.  And, you know, I don't have any further civil
13  liability as a result of this.  So, I mean, that -- that, in
14  fact, reinforces their credibility that they're not in any
15  way biased or prejudiced because of the lawsuit.  If we bring
16  the lawsuit in, I don't know how we tell the jury what to do
17  with that.
18    MR. STRIANSE:  It's not my intention to get into
19  the nuts and bolts of the lawsuit.  I want to be able to tell
20  the jury, through my cross-examination or otherwise, that
21  they got sued.  And when they got sued, they changed their
22  tune about Mark Bryant's conduct.
23    THE COURT:  Well, I mean, I'll hear you.  I don't
24  know what the settlement says.  I assume you're representing
25  Mr. Bryant, so he may know.  Certainly, if the settlement in

some way committed the department to do something, that might
change my mind, but I don't know if that's part of the
settlement or not.

        MR. STRIANSE:  I think it's more of a
chronological point that I'm trying to make.

        THE COURT:  I see your point, but let's talk about
it some more.  That's my preliminary ruling on the motions in
limine.

        MR. SONGER:  Your Honor, just to respond to that
for a moment --

        THE COURT:  All right.  And then you can go ahead
and raise any other questions you have about the case.

        MR. SONGER:  Yeah, I just want to be clear on the
point about the civil lawsuit.  As I think Your Honor
suggested, the lawsuit was settled and dismissed not only
long before this trial, but long before the defendant was
indicted, long before any of the witnesses even testified
before the Grand Jury.  So the lawsuit itself does not have
any suggestion that any of these people were -- were biased.

        THE COURT:  Yeah, I sort of would differ with you.
One of the things that was persuasive to the Court is the
lawsuit did not last long.  It had a short life.  Now, if
they had filed a lawsuit and gone at it tooth and nail month
after month and vigorously fought it in opposition, that
might be different.  Because now they've got a civil lawsuit,

1   and it won't go away, and it's costing them money, and it's
2   in the media.  You know, I could see some desire -- you know,
3   the jury might see some desire to retaliate because the
4   lawsuit just went on and on.  But the fact that it was filed,
5   settled very quickly, it's -- whatever it was, it didn't take
6   it long to get resolved.
7           MR. SONGER:  So I just want to confirm that there
8   won't be mention of that lawsuit in the defendant's opening
9   statement like there was in the first trial?
10          THE COURT:  That evidence is excluded.
11          MR. SONGER:  Okay.  Thank you.
12          MR. STRIANSE:  Your Honor, do you have the
13  government's Docket Entry 79 in front of you?
14          THE COURT:  I'm sure I do.
15          MR. STRIANSE:  And Page ID No. 1001, the first
16  full paragraph.
17          THE COURT:  Hold on.
18          MR. STRIANSE:  And I can hand it up to the Court
19  if you need me to do that.
20          THE COURT:  All right.
21          MR. STRIANSE:  It's the first full paragraph,
22  begins "Several months later."  This is the way that the
23  government intends to sort of soft pedal this change in
24  position of the -- of the sheriff's department.  I'm reading,
25  quote (as read):  Several months later, in July 2017,

1  Cheatham County Sheriff's Office leadership obtained and

2  reviewed audio of the 8:00 p.m. incident and TASER log records.

3             THE COURT:  Okay, hold up.  You said Document 79;

4  right?

5             MR. STRIANSE:  79.  Page ID 1001.

6             THE COURT:  I'm with you now.  Go ahead.

7             MR. STRIANSE:  First full paragraph.  So this is

8  sort of the cosmetic way of handling their change in

9  position.  What that fails to tell the jury and fails to tell

10 the Court is, it's not some benign sitting around the desk

11 and let's reconsider what Mark Bryant did in July of 2017.

12 It's right on the heels of we have been sued in federal court

13 in Nashville, and then they react by changing their position.

14             THE COURT:  And you see, that's why I'm allowing,

15 you know, the first investigation and the final

16 investigation, so you can set up chronologically the change

17 of the sheriff's department's position, the timeline for that

18 change.  And it allows you to not only cross-examine them to

19 show their bias and prejudice, but as you point out in your

20 brief, why.

21             MR. STRIANSE:  Yeah, but, I mean, they're going to

22 try to sell to the jury that this was some due diligence on

23 their part.  Well, we didn't really fully explore it the

24 first time, but we really sat down in July and took another

25 look at it, and we've come to this conclusion.  And the

1  Court's not going to let me ask the significant question,
2  "Well, you got sued in July of 2017.  That's why you changed
3  your position"?
4          I mean, to let that just pass in the night, that
5  this is some thing that they originated on their own because
6  they are concerned about the Norris investigation is --
7          THE COURT:  I hear you, but that's just rich for
8  cross-examination.
9          MR. STRIANSE:  And you're not letting me
10  cross-examine.
11          THE COURT:  Well, no, but I think there's so many
12  other points you can make.  It's a treasure trove of
13  cross-examination points that I know -- I know you'll do very
14  good in deciding which ones are the best.  But here you've
15  got a sheriff's department that made finding A, and then
16  later on changed it and made finding Z.  That's just rich
17  with cross-examination points, without --
18          MR. STRIANSE:  Well, maybe I'm just not seeing it,
19  but, I mean, it's --
20          THE COURT:  But even -- but even if I go your
21  route, how do we explain to the jury the civil lawsuit
22  without it being confusing to them?
23          MR. STRIANSE:  Why would that be confusing?  I
24  mean, they're sophisticated people.  They're adults.  They
25  know the import of being sued.  They may have been sued

1  themselves.

2        THE COURT:  All right.  Well, give me your

3  cautionary instruction, and I'll certainly look at how we do

4  that, if I get there.  I think it would be very confusing.

5  Here, you've got a civil lawsuit over the same issue that

6  we're here criminally on.  That case was settled.  What are

7  they to do with that?  I mean, the natural inference there

8  is, well, if -- I mean, I guess it's two.  Must not -- one

9  inference could be must not be much to it.  It was filed and

10 settled quickly.  Or, two, there must be something to it.

11 They settled.

12       MR. STRIANSE:  I just think it goes to explain

13 their change in position.

14       THE COURT:  Okay.

15       MR. STRIANSE:  That's all I was going --

16       THE COURT:  Well, let's see the cautionary

17 instruction on how we would go about presenting -- explaining

18 to the jury what they're to do with this related civil

19 lawsuit on the same subject as what they're here on.  But for

20 the time being, let's not make any reference to it or bring

21 it up until I've changed my ruling.

22       All right.  Anything else from the government?

23       MS. MYERS:  Yes, Your Honor, just a few things.

24       One is, in addition to filing the stipulations and

25 renewing those again and adding the one about color of law, I

1  just have a couple of other items.

2        How would the Court prefer that we refer to the

3  previous trial?  Because I assume we're not referring to the

4  previous trial as the previous trial, but is it a prior

5  hearing under oath?  Just to instruct our witnesses to make

6  sure there is no reference to the previous trial.

7        THE COURT:  Sure.  If you want to cross-examine

8  them on their prior sworn testimony, then just simply say

9  "Ms. Myers, isn't it true that you testified on

10  January the -- 2019, and at that time you gave the following

11  sworn testimony?"  You don't have to say there was a prior

12  trial.

13        MS. MYERS:  So simply -- and we have no wish to,

14  but just to make sure that we're consistent in how both sides

15  are presenting that so that we don't reference --

16        THE COURT:  I don't think -- either side and the

17  Court will make no reference to the first trial.  That's a

18  nonissue here.  We start all over again.

19        MS. MYERS:  So prior sworn testimony?

20        THE COURT:  On this date.  And you gave an oath.

21  Yes.  And you testified this to this question.  There's your

22  impeachment.

23        MS. MYERS:  Thank you.  In addition to that, I

24  know that --

25        THE COURT:  I'm sorry.  Be sure you all -- I

didn't go through all my standard, but as you're prepping
your witnesses, make sure they know not to refer to the first
trial, along with all my standard things, such as, you know,
referring to Mr. Bryant as Mr. Bryant and no vulgar,
inappropriate street kind of language.

MS. MYERS: Yes, Your Honor. The other thing,
about jury selection. So I know that last time, the Court
did want us to file a list of our questions that we were
going to ask to the jury, and we did that last time. And we
each filed a list of several questions that we asked that
were pre-approved by the Court.

This time, does each side get 20 minutes to speak
directly to the jurors?

THE COURT: Yes, you can -- I'm going to allow you
all to engage -- didn't I do that before? Didn't I allow you
to engage in voir dire before?

MS. MYERS: But we did have to submit questions in
advance.

THE COURT: No, I don't need -- I mean, I don't
need to see the questions, but I will tell you, if I feel
like the questioning is inappropriate, I'm going to stop you,
so we don't get into anything other than items or issues that
may have to do with a juror's bias, prejudice, prior
knowledge or something about this case that they can't set
aside and render a verdict solely on the evidence and the law

 1   as the Court will give them.  That's what voir dire is for.

 2           So I don't need to -- I don't need to -- I'm not

 3   going to pre-approve questions.  You-all are good lawyers.

 4   You've been down this road before.

 5           MS. MYERS:  Thank you, Your Honor.

 6           THE COURT:  Okay.

 7           MS. MYERS:  I think that's all I have, Your Honor.

 8           THE COURT:  Okay.  Mr. Strianse.

 9           MR. STRIANSE:  I have nothing further.  Thank you.

10           THE COURT:  All right.  So we'll start next

11   Tuesday at 9:00.  When am I going to get your new exhibit

12   book?

13           MS. MYERS:  When would you like them, Your Honor?

14           THE COURT:  Monday afternoon, Tuesday morning is

15   fine.  You're going to have one for the witness, just like we

16   did before.  I mean, I can go over that again, but I think

17   you-all know what's expected.

18           Any other issues that we haven't talked about from

19   either side?

20           MR. STRIANSE:  No, Your Honor.

21           THE COURT:  Okay.  All right.  Thank you.

22

23           (Proceedings concluded at 11:10 a.m.)

24

25

| | |
|---|---|
| 1 | <u>REPORTER'S CERTIFICATE</u> |
| 2 | I, Patricia A. Jennings, Official Court Reporter |
| 3 | for the United States District Court for the Middle District |
| 4 | of Tennessee, with offices at Nashville, do hereby certify: |
| 5 | That I reported on the Stenograph machine the |
| 6 | proceedings held in open court on January 2, 2020, in the |
| 7 | matter of *UNITED STATES OF AMERICA vs. MARK BRYANT*, Case |
| 8 | No. 3:18-cr-00144-1; that said proceedings in connection with |
| 9 | the hearing were reduced to typewritten form by me; and that |
| 10 | the foregoing transcript (pages 1 through 28) is a true and |
| 11 | accurate record of said proceedings. |
| 12 | This the 3rd day of January, 2021. |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | /s/ Patricia A. Jennings |
| 18 | Patricia A. Jennings, RMR, CRR<br>Official Court Reporter |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |